**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 20 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    18-10498 |
| Plaintiff-Appellee, | D.C. No.<br>5:17-cr-00257-LHK-1 |
| v. | |
| DAVID PAUL MARTINEZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted March 3, 2020
San Francisco, California

Before:  SILER,[**] WARDLAW, and M. SMITH, Circuit Judges.

David Martinez appeals the district court's denial of his motion to suppress

and his conviction at a stipulated facts bench trial for being a domestic violence

misdemeanant in possession of a firearm, in violation of 18 U.S.C. § 922(g)(9).

We have jurisdiction under 28 U.S.C. § 1291.  We vacate in part and remand for

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

further proceedings.

1.     In denying Martinez's motion to suppress evidence found during the search of his car, the district court erred by relying on pre-Proposition 64 cases that held that the odor of marijuana alone provides probable cause to search for violations of state marijuana laws. *See, e.g.*, *United States v. Solomon*, 528 F.2d 88, 91 (9th Cir. 1975); *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973); *United States v. Newman*, 563 F. App'x 539, 541 (9th Cir. 2014). These cases were decided at a time when possession of any quantity of marijuana was unlawful under state law. But that is no longer true in California after the passage of Proposition 64, which legalized the possession of 28.5 grams or less of marijuana, Cal. Health & Safety Code § 11362.1(a). Accordingly, these cases do not control whether Deputy Creager had probable cause to search for violations of California law.

We therefore vacate the denial of the motion to suppress and remand for further consideration of the search of Martinez's car. On remand, the district court should first address the factual question of whether Martinez consented to the search of his car. If the district court must reach the probable cause issue, it should determine whether the facts known to Deputy Creager supported probable cause to believe that Martinez's car contained evidence of a crime for which the Fourth Amendment permitted Deputy Creager to search. Such crimes might include

2

violations of California's remaining laws that restrict the possession and use of marijuana. *See, e.g.*, Cal. Health & Safety Code § 11362.3(a)(4) (prohibiting the possession of an open container of marijuana while operating a motor vehicle). As the district court did not address whether, in light of the fact that Deputy Creager is a state officer, it would be consistent with the Fourth Amendment to consider whether there was probable cause to believe the car contained evidence of a violation of *federal* marijuana laws, we decline to decide that issue in the first instance. *See Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc) (per curiam) ("[W]e are a court of review, not first view . . . .").

Because the remaining issues on appeal will remain relevant if the district court again denies the motion to suppress evidence from the car, we decide them here.

2.    The district court correctly rejected Martinez's argument that the evidence found in his apartment should be suppressed because the search warrant was invalid.[1]

a.    It was not improper for the warrant affidavit to include Martinez's statement that he had previously been housed in "B" pod of the county jail, which

---

[1] Of course, if the district court concludes that the evidence from the car should be suppressed, the evidence found in the apartment should likewise be suppressed because the search warrant affidavit relied heavily on the evidence found in the car.

was relevant because "B" pod was where the jail had housed members of the Norteño gang. Even assuming that Martinez should have been read *Miranda* warnings before he was asked about his previous jail housing, un-*Mirandized* but otherwise voluntary statements may be used in a warrant affidavit to establish probable cause. *United States v. Patterson*, 812 F.2d 1188, 1193 (9th Cir. 1987).

b. The district court correctly denied a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978). "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (internal quotation marks omitted), *cert. petition docketed*, No. 19-8178. Martinez failed to make that showing.

First, contrary to Martinez's argument, the information in the warrant affidavit about common Norteño gang symbols did not misleadingly suggest that Martinez himself had used all of these symbols. In context, it is clear that this section of the affidavit served only to demonstrate Deputy Creager's expertise in matters relating to the Norteño gang.

Nor was it false or misleading for Deputy Creager's affidavit to say that he knew from his experience that "'B' pod is where Norteno gang members are

4

housed'" and that he had "confirmed that 'B' pod was still a pod where Nortenos were being housed with jail staff on the day Martinez was booked." These statements were factually true and would not mislead a reasonable reader into thinking that *every* person housed in "B" pod was a member of the Norteño gang. Moreover, even assuming the affidavit could be read that way, Martinez failed to make a substantial preliminary showing that Deputy Creager acted intentionally or recklessly in his choice of language. *Id.*

Finally, Martinez argues that the affidavit falsely stated that two of his tattoos were gang-related. The affidavit described the tattoos as "money symbols"—that is, the letter "S with lines through it"—and noted that "[t]he letter 'S' with lines through it is a sign of disrespect to the Sureno criminal street gang." In the district court, Martinez presented a written report from Joshua Mason, an expert on "urban, prison, and gang culture." Mason agreed with the affidavit's statement that the letter "S" with lines through it is a sign of disrespect to the Sureño gang. He opined, however, that in Norteño tattoos, "the S is crossed out with a single line or by writing a K over it . . . or an X, and not a double vertical line as found on Mr. Martinez's tattoos," and that Martinez's tattoos therefore did not indicate Norteño membership.

However, even if Mason's report were credited, the most it shows is that Deputy Creager mistook one type of crossed-out "S" tattoo for another. A mistake

5

of this nature, on its own, is not enough to make a substantial showing of intentional or reckless falsity. *Id.*

c. The district court correctly concluded that the affidavit established "at least a colorable argument for probable cause" and that the officers conducting the search relied on the warrant "in an objectively reasonable manner." *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011) (standard of review for a warrant issued by a neutral magistrate). The affidavit stated that a stolen firearm had been found concealed in Martinez's car and described various indicia of affiliation with the Norteño gang, including Martinez's statement about 'B' pod, the aforementioned tattoos, and various apparel and belongings that were consistent with Norteño membership. It also said that Deputy Creager knew, based on his training and experience, that "gang members often possess weapons such as firearms, knives, bats etc." These facts, taken together, were enough to create at least a "colorable argument" for probable cause to believe that Martinez's apartment would contain additional firearms or evidence of gang affiliation. *See id.*; *cf. Messerschmidt v. Millender*, 565 U.S. 535, 549 (2012).

3. The district court did not plainly err by finding Martinez guilty without direct evidence that Martinez knew he had a prior misdemeanor domestic violence conviction at the time he possessed the firearm. *See Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (holding that another provision of 18 U.S.C.

6

§ 922(g) requires proof that the defendant had knowledge of the status that rendered the possession of the firearm unlawful); *United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019) (reviewing a *Rehaif* claim for plain error when the defendant did not raise it in the district court).

To prevail on plain error review, Martinez must show "(1) an error (2) that was obvious and (3) that affected [his] substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Benamor*, 937 F.3d at 1188 (citing *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)). While the decision in *Rehaif* establishes that the district court made an obvious error in failing to address whether Martinez knew of his domestic violence conviction, *id.*, the third and fourth prongs of the plain error test are not satisfied because Martinez has not shown a "probability that, but for the error, the outcome of the proceeding would have been different." *Id.* at 1189.

Martinez stipulated to the domestic violence conviction, which occurred less than five years before he was caught with the firearm. "[K]nowledge can be inferred from circumstantial evidence," *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)), and the short period of time between Martinez's conviction and his possession of the firearm is strong evidence that he knew of the conviction at the time of possession. Accordingly, Martinez cannot show that the district court's failure to find knowledge of his status affected

his "substantial rights or the fairness, integrity, or public reputation of the trial."

*Benamor*, 937 F.3d at 1189.

**VACATED; REMANDED.**